IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHAD LAWRENCE DUCHARME,

                    OPINION AND ORDER

        Plaintiff,

                    20-cv-356-bbc

  v.

ANDREW SAUL,
Commissioner of Social Security,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Chad Lawrence Ducharme is seeking review of a final decision denying his claim for supplemental security income under the Social Security Act. 42 U.S.C. § 405(g). The administrative law judge found that plaintiff was not disabled. Plaintiff contends that the ALJ erred by misinterpreting the medical records, making erroneous credibility findings and in concluding that there was a significant number of jobs in the national economy that plaintiff could perform. Because plaintiff's arguments are not persuasive, I will affirm the commissioner's decision.

      The following facts are drawn from the administrative record (AR).

## FACTS

### A. Social Security Application and Background

      Plaintiff Chad Lawrence Ducharme was born in 1982, making him 34 years old at the time he filed for disability insurance benefits and supplemental security income in 2016. In

1

his application, plaintiff alleged that he became disabled in April 2016 because of a lung condition. Plaintiff's application was denied initially and on reconsideration, and plaintiff requested a hearing before an ALJ. At the hearing held in March 2019, plaintiff amended his alleged onset date to August 1, 2017, asserting that he had a lumbar degenerative disc disease that prevented him from working. AR 47. The ALJ issued a written decision concluding that plaintiff was not disabled between August 1, 2017, his alleged onset date of disability, and March 28, 2019, the date of the ALJ's decision. AR 13-26.

In February 2020, the appeals council denied plaintiff's request for review, AR 1-3, making the ALJ's decision the final decision of the commissioner. Plaintiff then filed this lawsuit under 42 U.S.C. § 405(g).

B. Plaintiff's Medical Records

Plaintiff received a diagnosis of lung disease in September 2016. AR 16; 585-86. His physician prescribed medication and recommended that plaintiff avoid cigarette smoke. AR 21; 602. Plaintiff's lungs were stable until November 2018, when he had declining pulmonary function tests. AR 22; 656. However, plaintiff's spirometry results (from a breathing test) were still in the normal range, and plaintiff's physician did not recommend any additional treatment. Id.

Plaintiff reported back pain starting in August 2017, and reported that the pain worsened when he was climbing stairs, bending, twisting and walking. AR 22; 376. Imaging of plaintiff's back showed disc herniation at L4-L5, with mild to moderate approach of the

L5 nerve root. Id. Plaintiff was treated with steroid injections initially, but the relief from the injections did not last very long. AR 381. He also used ibuprofen and gabapentin for the pain, but reported little relief. Id. However, upon examination, physicians noted that plaintiff ambulated without difficulty, had normal muscle tone and strength, normal gait, symmetric leg movement and arm swing. AR 22; 382. In December 2017, his orthopedic surgeon recommended that plaintiff work. AR 636. In May 2018 his condition worsened after he lifted a transmission. He had a lumbar fusion and discectomy in June 2018. AR 556-57. After the surgery, plaintiff reported that his right leg felt much better, he stopped taking hydrocodone, was walking about 1/4 mile two times a day, and returned to driving without difficulty. AR 22; 575. He was observed to have an even, spontaneous gait, was able to toe walk with minimal difficulty, squat and recover,[ had equal length,] and stand on the left heel, but not the right. Id. He reported continued improvement and resolution of his radicular pain, but his physician noted intermittent back discomfort. AR 22; 576; 666.

Plaintiff also had problems with his elbow. In April 2018, plaintiff reported pain, catching and locking over the last year, as well as paresthesia in his fingers. An April 2018 x-ray showed cortical thickening in the proximal ulnar shaft, AR 740, and a later MRI showed moderate osteoarthritic change, advanced for plaintiff's age. AR 411. He had two injections in his elbow without significant relief. AR 499. He had surgery on his elbow in December 2018. AR 675. Two weeks after the surgery he reported some pain for which he

took ibuprofen as needed. Id. He reported some minor catching and limited range of motion, but no other limitations. Id.

### C. Medical Opinions

The state agency medical consultant at the initial level gave the opinion that plaintiff was limited to sedentary work, but did not find plaintiff's degenerative disc disease to be a severe impairment and did not find any postural limitations. AR 55. The medical consultant at reconsideration level gave the opinion that plaintiff was limited to light work, did not find degenerative disc disease to be a severe impairment, and limited claimant to occasional postural limitations. AR 67-69. (The last records reviewed by the medical consultants were in June 2017 and did not include information regarding plaintiff's 2018 surgeries and imaging.)

Plaintiff's treating physician, James Logan, M.D., also provided opinions about plaintiff's limitations. Logan gave the opinion that plaintiff could work at a job that did not require exertion, but could not work as a plumber's apprentice. AR 249; 251.

### D. Administrative Hearing

At an administrative hearing held in March 2019, plaintiff testified that he lived with his mother in Mauston, Wisconsin. AR 36. His most recent full-time job was as a plumbers apprentice in March 2016, but he had to stop working at that job because he contracted a lung disease. AR 37. Plaintiff testified that he took medication for his lung disease, that it

was getting progressively worse, and that it made him dizzy and short of breath. AR 39-40. He could walk only 15 to 20 feet before having to sit down. AR 39. Plaintiff testified that he could drive 30 miles before needing to get out and stretch, AR 37, and that he could sit for 15 minutes before needing to stand, walk or lie down. AR 46.

Plaintiff testified that he had back surgery in June 2018 from which he was still recovering. AR 40. He stated that his back hurt every day, that the surgery had not relieved his pain and that he took ibuprofen daily. AR 41. Plaintiff testified that he had not seen a doctor for his back pain since July 2018 because he had been told that he was going to have to live with the pain for the rest of his life. AR 42. He had surgery on his elbow in December 2018, but the surgery had not relieved the constant pain in his elbow. AR 43. Plaintiff stated that he had received injections for the pain, but that they had helped for only two days. Id.

Plaintiff testified that he was able to manage his personal needs and hygiene, with pain, that he could help with housework and yard work for short periods, followed by rest breaks, and that he went duck hunting about half a dozen times in November 2018. AR 45.

A vocational expert also testified at the hearing. The ALJ asked the vocational expert whether there would be jobs for someone with plaintiff's limitations. The vocational expert responded that someone with plaintiff's limitations could perform the job of "order clerk," for which there are 8,000 jobs nationally; "document preparer," for which there are 15,000 jobs nationally; and "inspector," for which there are 8,000 jobs nationally. AR 51.

5

### E. Administrative Law Judge's Decision

The ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of August 1, 2017, and that plaintiff had the severe impairments of respiratory disorder, herniated disc and osteoarthritis of the right elbow. AR 18. None of plaintiff's impairments met or equaled the severity criteria of a listed impairment. AR 19.

The ALJ found that plaintiff had the residual functional capacity to perform sedentary work, with further postural, manipulative and environmental restrictions. AR. 20. In particular, the ALJ found that plaintiff could:

> occasionally climb ramps and stairs, and never climb ladders, ropes, and scaffolds. He may occasionally balance, stoop, kneel, crouch, and crawl. He may occasionally reach overhead with the right upper extremity. He must have the ability to shift position from standing to sitting, or sitting to standing, every 30 minutes, for one to three minutes while remaining on task. He must have no exposure to fumes, odors, dust, and pulmonary irritants. He may have occasional exposure to workplace hazards.

AR 20.

The ALJ determined that plaintiff was unable to perform his past relevant work as a plumber's apprentice, security guard and maintenance worker, but based on vocational expert testimony, plaintiff could perform a significant number of jobs in the national economy. AR 25-26.

## OPINION

Plaintiff contends that the ALJ erred by (1) providing her own interpretation of medical evidence not considered by state agency consultants; (2) making erroneous credibility findings; and (3) finding that a significant number of jobs existed that plaintiff could perform.

In reviewing the ALJ's decision with respect to these arguments, I must determine whether the ALJ's decision is supported by substantial evidence, which means "sufficient evidence to support the agency's factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). The threshold for sufficiency is not high; the substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The ALJ must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination. Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014).

### A. Evaluation of Medical Evidence

At the time the state agency medical consultants reviewed plaintiff's medical records, plaintiff had not alleged that his back problems were disabling. Plaintiff's application focused on his lung disease, as did the medical consultants' review. In addition, the last medical records reviewed by the medical consultants were from June 2017, before plaintiff's back problems worsened and before he had back surgery. For these reasons, the ALJ gave only "partial weight" to the opinions of the state agency medical consultants. R23. The ALJ found that plaintiff's back problems required postural and exertional limitations that

warranted a more limited residual functional capacity than that recommended by the medical consultants. Id.

However, the ALJ determined that plaintiff could still perform sedentary work, with postural and manipulative limitations, and the option to change positions. The ALJ reviewed the medical records relating to plaintiff's back between August 2017 and his surgery in June 2018. Plaintiff criticizes the ALJ's review of this evidence, arguing that the ALJ "played doctor" and attempted to interpret the record herself, when the records should have been reviewed by another medical expert.

Plaintiff's arguments are not persuasive. The ALJ did not rely on her own interpretation of medical records. She relied on the findings from plaintiff's medical providers. In particular, the ALJ considered plaintiff's medical imaging and appointment records between August 2017 and May 2018, which showed that although plaintiff reported back pain, plaintiff still walked with a normal gait and without difficulty, and had intact sensation and normal muscle tone and strength. AR 22 (citing AR 382, 626, 636). The ALJ also noted that plaintiff's doctors did not recommend surgery initially, and instead recommended that plaintiff return to work. Id.

The ALJ acknowledged that the medical imaging showed that plaintiff's back worsened in May 2018, after he injured it while lifting. AR 22. However, the ALJ relied on medical notes made after the surgery to conclude that plaintiff's pain had decreased after surgery, and that he was able to walk and drive with minimal difficulty. Id. (citing AR 575).

The ALJ did not attempt to interpret these medical records on her own; she relied on plaintiff's own reports to his doctors about the alleviation of his pain after surgery.

Plaintiff also argues that the ALJ ignored more recent evidence showing that plaintiff's back condition had worsened, including an alleged September 2018 MRI and a September 2020 note from plaintiff's doctor stating that plaintiff's back problems were worsening. Plt.'s Br., dkt. #19, at 10 (citing AR 578). However, the MRI to which plaintiff refers was actually taken in May 2018, after plaintiff's injury and shortly before plaintiff's surgery. AR 578. The ALJ acknowledged that plaintiff injured his back in May 2018, received an MRI and underwent surgery. Similarly, the doctor's note that plaintiff cites was from September 2018, not September 2020. AR 492. Plaintiff reported to his doctor that he had been experiencing low back pain for about a month, which was relieved by pain medication. Id. The ALJ acknowledges that plaintiff continued to report intermittent back pain after his June 2018 surgery, but also noted that plaintiff had not sought further treatment for his back problems since then. Plaintiff points to nothing in the record suggesting that his back impairments caused additional limitations after his June 2018 surgery that were not considered by the ALJ. The ALJ properly relied on plaintiff's doctor's conclusions about plaintiff's condition and the success of plaintiff's surgery in addressing his pain.

In sum, the ALJ reasonably and properly considered the orthopedic experts' assessments when evaluating the medical evidence, and plaintiff has failed to show that the ALJ's consideration of the medical evidence was erroneous.

## B. Subjective Complaints

In evaluating plaintiff's subjective complaints, the ALJ concluded that plaintiff's testimony about the intensity, persistence, and limiting effects of his symptoms was inconsistent with the medical and other evidence. Plaintiff argues that the ALJ's assessment of plaintiff's subjective complaints is flawed because the ALJ minimized plaintiff's symptoms and placed too much emphasis on the few activities in which plaintiff engaged, but plaintiff's challenges to the ALJ's discussion are not persuasive.

The ALJ discussed plaintiff's hearing testimony about the chronic pain and limitations caused by his lung disease, back pain and elbow pain. AR 21. However, the ALJ concluded that plaintiff's reports of pain and other symptoms related to his herniated disc and degenerative disc disease were inconsistent with other evidence in the record, including objective medical findings, plaintiff's own reports to medical providers and plaintiff's daily activities. AR 22. The ALJ's findings are supported by substantial evidence. The ALJ pointed to the effectiveness of plaintiff's June 2018 surgery, noting that plaintiff reported that his surgery alleviated his radicular pain. AR 22-23. The ALJ noted that plaintiff was able to engage in a wide range of activities during the relevant period, including performing personal care, working on part-time basis as a floor installer, walking, driving, riding on a tractor, helping with household tasks and duck hunting. AR 21. The ALJ's discussion of these activities was based directly on plaintiff's own hearing testimony and statements that plaintiff made to his medical providers. The ALJ did not equate these activities will

plaintiff's ability to work at a full-time job, but instead considered these activities when assessing plaintiff's limitations and in concluding that plaintiff could perform only sedentary work, with additional postural and environmental limitations. The ALJ's discussion was thorough and well-supported in this regard, and plaintiff has failed to show any error.

### C. Job Numbers

Plaintiff's third argument is that the ALJ erred in concluding that there were a significant number of jobs in the national economy that someone with plaintiff's residual functional capacity could perform. The ALJ relied on the testimony of a vocational expert to determine that plaintiff could perform the jobs of: "order clerk," for which there are 8,000 jobs nationally; "document preparer," for which there are 15,000 jobs nationally; and "inspector," for which there are 8,000 jobs nationally. AR 51. Plaintiff argues that 31,000 jobs nationally is not a significant number of jobs, and that even if it were, the ALJ should have considered how many jobs would be available in the region where plaintiff lives.

The ALJ was not required to consider how many jobs existed in the region where plaintiff lives. The relevant question is whether the claimant could perform "substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). See also Alaura v. Colvin, 797 F.3d 503, 507 (7th Cir. 2015) ("[I]f there is a significant number of

jobs that the applicant for benefits can perform anywhere in the United States he is deemed not disabled.").

As for whether 31,000 jobs is a "significant number of jobs," the Court of Appeals for the Seventh Circuit has not specified how many jobs amount to a "significant number." However, the court of appeals has found that 55,000 jobs is a significant number, Collins v. Berryhill, 743 F. App'x 21, 25-26 (7th Cir. 2018), and other courts have found that numbers lower than 31,000 constitute a "significant number" of jobs. See, e.g., Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 528-29 (9th Cir. 2014) (25,000 nationwide jobs was significant); Taskila v. Comm'r of Soc. Sec., 819 F.3d 902, 905 (6th Cir. 2016) (6,000 nationwide jobs was significant); Dorothy B. v. Berryhill, No. 18 CV 50017, 2019 WL 2325998, at *7 (N.D. Ill. May 31, 2019) (17,700 nationwide jobs was significant). See also Joseph M. v. Saul, No. 18 C 5182, 2019 WL 6918281, at *17 (N.D. Ill. Dec. 19, 2019) (40,000 nationwide jobs was significant). The ALJ's conclusion that 31,000 nationwide jobs was a significant number of jobs is supported by these cases, and plaintiff has provided no persuasive reason why this court should overturn the ALJ's decision on this ground. Accordingly, I will affirm the commissioner's decision denying benefits.

## ORDER

IT IS ORDERED that the that the decision of defendant Andrew Saul, Commissioner of Social Security, is AFFIRMED and plaintiff Chad Lawrence Ducharme's appeal is

DISMISSED.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 30th day of April, 2021.

BY THE COURT:
/s/

_____
BARBARA B. CRABB
District Judge